# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2023-2849
_____

ROBERT JOEL COTA,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Escambia County.
Coleman Lee Robinson, Judge.

June 18, 2025

ROWE, J.

Robert Joel Cota appeals his judgment and sentence after a jury trial in which he was convicted of (1) sexual battery on a victim under the age of twelve, (2) sexual battery on a victim over the age of twelve while in a position of familial or custodial authority, (3) aggravated child abuse by willfully torturing or punishing a child, and (4) aggravated assault with a firearm. Cota raises two claims of error. He alleges that the trial court erred by declining to discharge his appointed counsel after a *Nelson*[1]

---

[1] *Nelson v. State*, 274 So. 2d 256 (Fla. 4th DCA 1973).

hearing. And he asserts that the court erred by not informing him of his right to represent himself and by failing to hold a *Faretta*[2] hearing. We affirm.

*Facts*

Police arrested Cota after learning that he was physically and sexually abusing his fourteen-year-old daughter. Investigators first learned of the abuse after officers responded to a gas station where the victim had locked herself in a bathroom and refused to come out. The victim's mother alerted police after Cota called her to tell her what was happening. She arrived at the gas station and alerted Cota that law enforcement was on the way. Security footage shows Cota and the victim's mother arguing outside the bathroom. Cota then left the gas station. Only then did the victim allow her mother to enter the bathroom.

Officers interviewed the victim at the gas station. She explained that, on the way to the station, Cota accused her of recording him with a hidden microphone and conspiring with gang members to harm him. When the victim denied Cota's accusations, he became angry and pulled his gun out from between the seats in his car and pointed it at her. The victim, fearing Cota would shoot her, exited the car and locked herself inside a bathroom in the gas station. The victim also disclosed to the officers that Cota had a history of abusing her before the incident at the gas station.

Aayana McCreary, a child protection team (CPT) case coordinator, interviewed the victim about the bathroom incident and the alleged physical abuse. The victim explained that when her parents separated, she chose to live with Cota because if she lived with her mother, she would have greater responsibility for the care of her younger siblings. After the victim's mother moved out of the marital home, Cota became paranoid and started to abuse the victim. During this time, the victim had limited contact with her mother. The victim denied that anyone had ever touched her in a sexual manner and stated that she would have told her mother if someone had. Following McCreary's interview with the

---

[2] *Faretta v. California*, 422 U.S. 806 (1975).

victim, a CPT medical examiner documented injuries and extensive bruising to the victim's face, ear, legs, hands, ribs, neck, arms, buttocks, and breasts.

The State charged Cota with aggravated child abuse and aggravated assault with a firearm. While awaiting trial, Cota attended a new member meeting at a local church. Cota approached the leader of the new members program, the church's pastor, to discuss the church's teachings. Cota complained to the pastor about the church's prohibition against incest. When the pastor questioned him, Cota admitted to sexually abusing the victim. Cota told the pastor the victim's name, that she was his fourteen-year-old daughter, and that he intended to marry her. The pastor told Cota to repent and then contacted law enforcement to report the conversation.

The report prompted the police to interview the victim and the victim's mother again. The victim revealed that Cota had been sexually abusing her for three years. She estimated that he had sexually abused her around six hundred times. The victim's mother then admitted that she had learned of the abuse during the incident at the gas station, but she claimed the victim later denied the abuse. Officers questioned Cota, who confirmed he attended the new members program at the church. But Cota was evasive when questioned about the alleged sexual abuse and denied that he physically abused his daughter.

McCreary conducted a second CPT interview. The victim told McCreary that the sexual abuse started when she was eleven. She knew she was eleven because the first time it happened was while she, her mother, and Cota were still living in her maternal grandmother's home. Even so, the victim also said she was twelve when Cota first sexually abused her. But then reaffirmed that she was eleven when the sexual abuse began. The last time Cota sexually abused the victim was the day before the incident at the gas station.

The State moved to introduce both CPT interviews as child hearsay evidence. Cota challenged the admissibility of the second interview, arguing the victim's statements were unreliable. The court rejected his argument, finding that the victim's recitation of

3

the facts was specific and reliable, and that she characterized the alleged abuse in terms a normal teenager would use. Despite the conflicts between the first and second CPT interviews, the court found the victim's narrative reliable because she did not contradict herself during the second interview. The court also emphasized the victim's clear recollection of being eleven years old the first time Cota abused her.

*Motion in Limine*

Cota also moved to exclude his statements to the pastor. Cota argued that his statements to the pastor fell under section 90.05, Florida Statutes (2023), otherwise known as the "clergy privilege." Cota claimed he sought spiritual guidance when he spoke with the pastor. Cota testified that he sat one-on-one with the pastor at a table and spoke privately, separate from the new members group. He could not remember the pastor's name or position and admitted that he was not the only person in the room.

The pastor testified that he did not introduce himself to Cota as a church counselor and did not offer counseling services during the new members meeting. Cota did not seem to be seeking spiritual guidance, but merely complaining about the church's prohibition against incest. The pair spoke at normal volume in the same room where other potential new members were present.

The State argued Cota was not seeking spiritual guidance when he admitted his abuse of the victim to the pastor. The State emphasized that Cota did not recall the pastor's name or position, that Cota was not a member of the church, and that Cota's conversation with the pastor was not private. The court ruled that Cota's comments were not privileged under section 90.05 and denied the motion.

*Nelson Hearing*

Immediately after the court denied the motion in limine, Cota asked the court to appoint new counsel. He alleged that his attorney, Gregory Wise, had not prepared him for the motion hearing and that he had not seen Wise in months.

The court conducted a *Nelson* hearing. The court asked Cota what he specifically wanted the court to do. Cota responded, "I really need just to go over things more with [Wise] and see him more, or give me a new lawyer." Cota alleged Wise did not listen to his requests, failed to provide him with copies of discovery materials, and had not conducted depositions Wise had promised to set over a year earlier. Cota alleged he had not seen Wise in six months, and he complained that he did not know when he would next see him.

Wise explained that he may have mentioned to Cota his intent to depose the victim at the onset of the case, but he decided not to interview her after watching the CPT interviews. Wise sent an investigator out to Cota to play the victim's interviews for him. And Wise provided Cota with every piece of discovery he had. Wise explained his usual practice was to visit with in-custody clients the weekend before jury selection. Jury selection had been set several times in Cota's case. Wise also told the court he intended to visit Cota again before trial began.

Cota later conceded that he had seen the victim's recorded interviews. But he insisted that he had not seen copies of any other discovery materials. Cota admitted that Wise would visit him "real quick" before hearings, but he felt that was not enough.

The court informed Cota that his complaints centered on Wise's strategic decisions, which were not ineffective. The court observed that Cota had not complained about Wise in the two years that his case had been pending, and that he raised concerns only after he received an adverse ruling on his motion in limine. The trial court found that Wise had not been ineffective and that Cota's assertions were not credible. The court denied Cota's motion to appoint new counsel.

*Trial*

During the trial, the State presented testimony from several witnesses, including the victim, the victim's mother, and the CPT investigators. The victim, now sixteen, testified that Cota was absent when she was young, but re-entered her life when he moved in with her and her mother. Cota's inappropriate behavior

5

escalated over time, until he began sexually abusing the victim when she was eleven. She was certain of her age because she lived in her grandmother's home when it happened. Cota continued to sexually abuse the victim for three years.

When the victim was fourteen, her mother and Cota separated. The mother moved out of the family home with her younger children, leaving the victim behind. Cota's sexual abuse became more frequent in the months that followed. Cota also became angry, paranoid, and physically abusive toward the victim. He started beating her almost daily with various objects: tools, cords, a timing belt, a wrench, a rack of sockets, and his gun. Cota would strike the victim for asking a question, if he believed she was talking to someone in the home, if he believed she was spying on him, or if she brought him the wrong car tool. The victim described an incident when Cota hit her in the ribs with his gun. She had seen Cota shoot his gun before and feared that he would shoot her.

The victim testified about the incident at the gas station. She admitted that she told her mother about the sexual abuse in the bathroom. But she asked her mother not to tell police about the abuse because she was embarrassed.

The victim's mother testified that she first learned the extent of Cota's abuse during the gas station incident. When she told Cota that she had called law enforcement, he told her that he had something to say before she "found out." Cota then said, "Me and [the victim] . . . for three years." She understood this to mean that Cota had been sexually abusing the victim for three years. The victim confirmed the sexual abuse when she let her mother into the bathroom. That night and for the first time, the victim's mother observed bruises, marks, and scars left on the victim by Cota.

The State moved to publish the victim's recorded CPT interviews. Cota renewed his objection to the interviews, arguing they were cumulative to the victim's trial testimony. The court overruled the objection.

Lydia Rosenberger testified next. She performed a medical exam and documented the victim's injuries after the first CPT

interview. Rosenberger noted scratches and bruises on the victim's face and eyes, along with significant bruising on her ear, skull, and neck that Rosenberger explained would be caused by traumatic impact. The victim had extensive bruising on her legs consistent with being whipped by cords or another flexible object. The victim's bruises were in different stages of healing, indicating that she was hit often and at different times. Rosenberger's opinion was that the victim's injuries were inflicted, not accidental.

After the State's case concluded, Cota moved for a judgment of acquittal on count one—sexual battery on a victim under the age of twelve. He argued that the victim's trial testimony that she was eleven the first time Cota sexually abused her differed from her CPT interview in which she told McCreary she was twelve. The court denied the motion, finding that there was sufficient evidence of the victim's age when the abuse began.

Cota testified. He denied sexually abusing the victim and asserted that any affection he had shown her was that of a normal parent-child relationship. He denied telling the victim's mother or the pastor that he sexually abused the victim. Cota admitted to going "too far" by hitting the victim with belts, cords, and wires, but he denied hitting the victim with tools.

At the close of the evidence, Cota renewed his motion for judgment of acquittal without new argument. The court denied the motion. The jury found Cota guilty as charged. The trial court sentenced Cota to consecutive terms of life in prison for counts one and two, thirty years in prison for count three, and five years in prison for count four. This timely appeal follows.

*Analysis*

Cota first argues that the trial court abused its discretion by not discharging his appointed counsel after the *Nelson* hearing. He maintains that he presented unrefuted evidence of counsel's incompetence and failure to prepare him for the motion in limine hearing. And he maintains that, but-for counsel's ineffectiveness, the pastor's testimony would have been excluded and the State would have been left with only the victim's unproven allegations as evidence of the sexual abuse.

We review for abuse of discretion a trial court's ruling on a motion to discharge appointed counsel. *Figueroa-Sanabria v. State,* 366 So. 3d 1035, 1048 (Fla. 2023). We will affirm that ruling unless no reasonable person would adopt the same view as the trial court. *Id.* The trial court did not abuse its discretion when it refused to discharge counsel because Cota merely expressed general dissatisfaction with counsel's representation and strategy. *See LeGrand v. State,* 31 So. 3d 924, 926 (Fla. 1st DCA 2010) (holding that generalized dissatisfaction with counsel's representation or trial strategy does not render the representation ineffective).

An indigent defendant's right to appointed counsel necessarily includes a right to effective representation under the Sixth Amendment. *Nelson,* 274 So. 2d at 258. When a defendant unequivocally asks the court to discharge appointed counsel before trial, the court must first inquire about the reason for the request. *Id.* If a defendant asserts allegations that counsel is rendering ineffective representation, the court then conducts a further inquiry to determine whether these claims have merit. *Id.* The scope of the inquiry is only as specific as the defendant's complaints. *Logan v. State,* 846 So. 2d 472, 477 (Fla. 2003).

Here, Cota alleged that Wise was ineffective because he did not visit Cota often enough. First, a general complaint that counsel has not visited enough is not an adequate ground to find that counsel is ineffective. *See Morrison v. State*, 818 So. 2d 432, 440-41 (Fla. 2002). ("A lack of communication is not a ground for an incompetency claim."). Second, Cota's allegation was refuted by his admission that Wise visited him before hearings and by Wise's testimony that he met with Cota on multiple occasions.

Cota next argued that his counsel was ineffective for failing to depose the victim. Counsel's decision whether to investigate and depose a witness is a strategic one. *Hannon v. State,* 941 So. 2d 1109, 1119 (Fla. 2006). That is particularly true in child sexual abuse cases. *Wendell v. State,* 392 So. 3d 273, 277 (Fla. 1st DCA 2024) (holding trial counsel's strategic decision to limit cross-examination and impeachment of minor victim was not ineffective). Wise explained to the court that, after reviewing the CPT interviews, he decided not to depose the victim. Because this

8

decision was reasonable and made after careful consideration of the evidence and available alternatives, it cannot be considered ineffective. *See Occhicone v. State,* 768 So. 2d 1037, 1048 (Fla. 2000) (holding reasonable strategic decisions do not render counsel ineffective).

Cota's final allegation of ineffective representation stems from his claim that counsel failed to provide him with any discovery materials. But Wise asserted that an investigator from his office showed Cota the victim's recorded CPT interviews, and he explained that discovery had been limited. Cota then conceded he had seen the CPT interviews. Thus, Cota's complaint on his access to discovery was generalized, unspecific, and contradicted by his own admission. *LeGrand,* 31 So. 3d at 926. And to the extent that Cota and Wise's recollections differed, the trial court determined that Wise was more credible. Finding no error by the trial court in denying Cota's motion to discharge counsel, we affirm. *Potts v. State,* 718 So. 2d 757, 759 (Fla. 1998).

Cota argues next that the trial court erred when it failed to conduct a *Faretta* inquiry. As the Sixth Amendment protects a defendant's constitutional right to counsel, so too does it protect a person's right to conduct his own defense. *Faretta,* 422 U.S. at 836. Before a defendant waives counsel, the trial court is obligated to ensure he does so "with eyes open" by ensuring the defendant understands the disadvantages of self-representation. *Potts,* 718 So. 2d at 759. As with a defendant's desire to discharge counsel under *Nelson*, a *Faretta* inquiry is triggered only when a defendant asserts an **unequivocal** desire to represent himself at trial. *State v. Craft,* 685 So. 2d 1292, 1295 (Fla. 1996); *Case v. State,* 865 So. 2d 557, 559 (Fla. 1st DCA 2003). Here, Cota never asserted his desire to represent himself. But now on appeal, he argues the trial court was under an affirmative duty to inform him of his right to conduct his own defense. He claims that if the court had advised him of his right to self-representation, he would have elected to proceed to trial without counsel.

This argument fails for two reasons. First, the trial court was under no affirmative duty to advise Cota of his right to waive counsel and represent himself. *Craft,* 685 So. 2d at 1295 (holding that *Nelson* does not require the court to inform the defendant of

the right to self-representation). Second, Cota never expressed any desire to exercise his right to waiver, let alone an unequivocal desire. Instead, when the court questioned Cota about what he wanted at the *Nelson* hearing, Cota responded that he wished for Wise to go over things more with him or to have the court appoint a new attorney. Even after the trial court declined to appoint new counsel, Cota never expressed any desire to self-represent. And a trial court's denial of a defendant's motion to appoint new counsel, without a clear request to self-represent, does not automatically trigger a *Faretta* inquiry. *See Blake v. State,* 972 So. 2d 839, 845-46 (Fla. 2007).

Finding no error by the trial court, we AFFIRM Cota's judgment and sentence.

ROBERTS and KELSEY, JJ., concur.

––––––––––––––––––––––––––

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

––––––––––––––––––––––––––

Jessica J. Yeary, Public Defender, and Ross S. Haine, II, Assistant Public Defender, Tallahassee, for Appellant.

James Uthmeier, Attorney General, and Christina Piotrowski, Assistant Attorney General, Tallahassee, for Appellee.